## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

James Zeas, )
                                       )
            Petitioner, )
                                         )        Case No. 21 C 50298
          v. )
                                         )        Hon. Iain D. Johnston
Jason Garnett, Chief of Parole, )
Illinois Department of Corrections, )
                                         )
            Respondent. )

## MEMORANDUM OPINION AND ORDER

Following a bench trial in the Twenty-Second Judicial District, McHenry County, Illinois, Petitioner James Zeas was convicted of one count of child pornography in violation of 720 ILCS 5/11-20.1(a)(1)(vii). He petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his child pornography conviction contravenes the First Amendment and Supreme Court precedent, that the state court made an unreasonable determination of fact in finding the video constituted child pornography, and that his due process rights were violated as he was convicted without proof of all the requisite elements of Illinois' child pornography statute. (Dkt. 1.) For the following reasons, Zeas' petition is denied, and the Court declines to issue a certificate of appealability. Zeas cannot meet the standards of § 2254, which is the issue before the Court.

## I.     Background[1]

In June 2009, Zeas recorded his niece A.S., a minor, as she undressed, exposing her breasts, in the co-ed family bathroom at the Algonquin Lifetime Fitness health club. (Dkt. 15-8, p. 331);

---

[1] The following facts are drawn from the state court record, (Dkt. 15), and the Appellate Court of Illinois' opinion on direct review. *See People v. Zeas*, 2020 IL App (2d) 170437-U. The state court's factual findings are presumed correct unless Zeas rebuts this presumption by clear and convincing evidence, *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)), and Zeas has not met this burden.

*People v. Zeas*, 2020 IL App (2d) 170437-U, ¶¶ 5-7. He did this by hiding a recording device on a towel dispenser and pointing it at a large countertop mirror. *Id.* at ¶ 6. The device recorded the images that were reflected in the mirror. *Id.*

In one of the video clips, Zeas is seen hiding the recording device. *Id.* at ¶ 6. After it is hidden, A.S. and her brother, M.S., walk into the bathroom. *Id.* Zeas tells the boy to leave and let A.S. use the room first. *Id.* Zeas and the boy then leave. *Id.* Once A.S. is alone, she uses the toilet. *Id.* While seated on the toilet, she changes from her street clothes to her bathing suit. *Id.* During the period of time in which A.S. is changing, only her head can be seen. *Id.* The video ends with Zeas in view retrieving the recording device. *Id.*

In a second video clip, Zeas is again seen positioning the recording device to face the mirror and capture images from the mirror's reflection. *Id.* at ¶ 7. This time, Zeas adjusts the recording device to focus on the area of the bathroom where the toilet is located. *Id.* Once he is satisfied with the device's positioning, he conceals the device with paper towels and a baseball hat. *Id.* Zeas exits and shortly after A.S.'s brother appears, changes out of his swimsuit and into his street clothes, and then leaves. *Id.* He can only be seen from the waist up. (Dkt. 15-8, p. 333.) The video proceeds as follows:

> A.S. then enters the changing room wearing her swimsuit. She closes the door, turns and stands in front of the mirror, visible only from the waist up. A.S. then proceeds to take off her bathing suit top, exposing her fully developed breasts. She then puts on clothes and exits the changing room. A.S. never looks at the camera and appears unaware that she is being recorded. Later in the second clip, [Zeas] is viewed removing the recording device.

*Zeas*, 2020 IL App (2d) 170437-U, ¶ 7.

At Zeas' bench trial, his ex-wife, Bozena Kalita, testified regarding her discovery of the video clips on Zeas' computer. *Id.* at ¶ 5. Kalita testified that she found the clips in April 2011,

2

shortly after she had told Zeas she would be filing for divorce. *Id.* She recognized her niece, A.S., her nephew, M.S., her daughter, and Zeas in various parts of the videos. *Id*. She also recognized that the recordings had been made in the family bathroom at the Algonquin Lifetime Fitness health center where she and Zeas were members. *Id.* Kalita explained that A.S.'s family had visited her and Zeas from Poland in June 2009 and stayed in their home. *Id.* at ¶ 4. During their stay, Zeas and the family celebrated A.S.'s fifteenth birthday together on June 30, 2009. *Id.*

After discovering the video clips, Kalita copied them onto a DVD, and gave the DVD and computer to her divorce attorneys. *Id.* at ¶ 6. The DVD and computer were later returned to her in 2012 when their divorce was finalized. *Id.* Post-decree proceedings, however, continued for several years, and in 2015, Kalita gave the video to the guardian *ad litem* who had been appointed for the divorce. *Id.* at ¶ 8. The guardian *ad litem* turned the DVD over to the Algonquin Police Department. *Id.*

The second video clip depicting A.S.'s exposed breasts formed the basis of Zeas' child pornography charge. (Dkt. 15-8, p. 334.) The case turned on whether this recording "depicted or portrayed" A.S. "in any pose, posture or setting involving a lewd exhibition of … [her] fully or partially developed breast." 720 ILCS 5/11-20.1(a)(1)(vii); *see also* (Dkt. 15-8, p. 335.)

Illinois courts use a six-factor test from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), to determine whether a visual depiction of a child constitutes a "lewd exhibition." *See People v. Lamborn*, 708 N.E.2d 350, 354-55 (Ill. 1999). Six *Dost* factors exist: "(1) whether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the

3

age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.* at 354. All factors need not be present for the depiction to be considered lewd. *Id.* at 355. Rather, "lewdness" is a case-by-case determination that involves analyzing the overall content of the image, including the age of the child. *Id.*

The trial court applied the *Dost* factors and, in an oral ruling, found that: (1) the focal point of the video was A.S.'s naked breasts;[2] (2) a changing room at a health club is not sexually suggestive; (3) A.S. is not depicted in an unnatural pose nor inappropriate attire; (4) A.S.'s fully developed breasts are completely exposed, and though the portion of the video in which she is naked are short, that portion can be considered individually for lewdness; (5) A.S. does not know she is being watched, and does not convey sexual coyness or a willingness to engage in sexual activity; and (6) the recording was designed to elicit a sexual response as the viewer is placed in the position of a voyeur. (Dkt. 15-8, p. 335-41.) The trial court's sixth *Dost* factor finding was based on the Appellate Court of Illinois' analysis in *People v. Sven*, 848 N.E.2d 228, 239 (Ill. App. Ct. 2006) (holding sixth *Dost* factor inquiry focuses on "whether the images invite the viewer to see the activity on the tape from some sexualized or deviant point of view").[3] (Dkt. 15-8, p. 339-41); *Zeas*, 2020 IL App (2d) 170437-U, ¶ 9.

---

2  The trial court noted that the first *Dost* factor specifically refers to a child's genitals, but that it did so because it was addressing the federal child pornography statute which focused on the genitals or pubic area. (Dkt. 15-8, p. 337); *see also Dost*, 646 F. Supp. at 830-32; 18 U.S.C. §§ 2251, 2256(2)(A)(v). Because Illinois' statute prohibits lewd exhibition of a child's "genitals, pubic area, buttocks, or if such person is female, a fully or partially developed breast…" *see* 720 ILCS 5/11-20.1(a)(1)(vii), the trial court's inquiry under *Dost*'s first factor was whether the focal point of the recording was A.S.'s breasts. (Dkt. 15-8, p. 337.)

3  In *Sven*, the defendant hid a video camera in his bathroom and instructed his daughter's 14- or 15-year-old babysitter to get in the tub with his daughter whenever she gave her a bath. 848 N.E.2d at 230. The Appellate Court of Illinois

4

Based on the first, fourth, and sixth *Dost* factors, the trial court ruled that the second video clip depicted a lewd exhibition of A.S.'s fully developed breasts. (Dkt. 15-8, p. 341.) Zeas was convicted of one count of child pornography and sentenced to four years' imprisonment. *Zeas*, 2020 IL App (2d) 170437-U, ¶¶ 9-10. He is currently serving an indeterminate mandatory supervised release term of three years to life.[4] (Dkt. 1, p. 1-2); *see also* 730 ILCS 5/5-8-1(d)(4).

Zeas appealed his conviction to the Appellate Court of Illinois ("Appellate Court"), and argued, in relevant part, that: (1) the trial court's interpretation of Illinois' child pornography statute violates the First and Fourteenth Amendments, and the Supreme Court's holding in *New York v. Ferber*, 458 U.S. 747 (1982); (2) the trial court erred in finding the recording of A.S. constitutes child pornography; and (3) the statutory element of "pose, posture or setting" required for Illinois child pornography convictions was not proven. (Dkt. 15-1, p. 1-47.)

The Appellate Court affirmed Zeas' conviction. *Zeas*, 2020 IL App (2d) 170437-U, ¶ 44. In addressing the "lewdness" issues, the Appellate Court conducted a *de novo* review of the recording and agreed with the trial court that *Dost*'s first, fourth, and sixth factors weighed in favor of a lewdness finding. *Id.* at ¶¶ 25, 29, 36. The state court therefore held the recording of A.S. was lewd and violative of Illinois' child pornography statute, the interpretation of the child

---

held the videos constituted child pornography, finding *Dost*'s first, fourth, and sixth factors weighed in favor of lewdness. In finding the sixth *Dost* factor was met because the recording placed the viewer in the role of a voyeur, the state court explained: "Voyeurism is sexually motivated conduct, and it is recognized as deviant behavior. … Thus, by placing the viewer in the role of voyeur, the images become sexualized. Moreover, they are sexualized in a way consistent with deviant behavior." *Id.* at 239-40.

4 Because Zeas is serving a term of supervised release, he satisfies the "in custody" requirement for federal habeas jurisdiction. *See Stanbridge v. Scott*, 791 F.3d 715, 720 (7th Cir. 2015) (citing *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963)). The Court notes that Zeas also states that he is required to register as a sex offender. (Dkt. 1, p. 2.) Unlike his term of supervised release, his lifetime sex offender registration requirement does not render him "in custody," as it is neither a direct nor a significant constraint on his freedom of movement. *Stanbridge*, 791 F.3d at 720 (citing *Virsnieks v. Smith*, 521 F.3d 707, 719-20 (7th Cir. 2008)).

pornography statute did not run afoul of the First or Fourteenth Amendments, and the evidence was sufficient to support Zeas' conviction beyond a reasonable doubt. *Id.* at ¶¶ 36-38.

Zeas then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois, arguing three errors: (1) the state court's interpretation of Illinois' child pornography statute violated *Ferber*; (2) the state court erred in finding that the recording of A.S. was child pornography; and (3) his due process rights were violated where he was convicted without proof of all of the statutory elements of child pornography. (Dkt. 15-5, p. 1-22.) The Supreme Court of Illinois denied his PLA. *People v. Zeas*, 163 N.E.3d 749 (Table) (Ill. 2021). Zeas pursued neither a writ of certiorari from the United States Supreme Court, nor postconviction remedies in state court; instead, he filed the instant habeas corpus petition. (Dkt. 1.)

## II.    Discussion

Zeas' habeas corpus petition raises three claims: (1) the state court's conclusion that the recording of A.S. constitutes child pornography runs contrary to the First Amendment and Supreme Court precedent, and is an unreasonable application of *Ferber*; (2) the state court's conclusion that the video of A.S. was lewd is an unreasonable determination of fact; and (3) Zeas' due process rights were violated when not all of the requisite statutory elements of Illinois' child pornography statute were proven beyond a reasonable doubt. (Dkt. 1, p. 12-40.) For the reasons discussed below, Zeas is not entitled to habeas relief on any of his claims.

### A.    Legal Standard

The Antiterrorism and Effective Death Penalty Act (AEDPA) bars federal habeas relief for claims adjudicated on the merits in state court unless the state court decision "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

6

Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Armfield v. Nicklaus*, 985 F.3d 536, 540-41 (7th Cir. 2021) (quoting 28 U.S.C. § 2254(d)(1)-(2)). This "difficult to meet" and "highly deferential standard" reflects the view that "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021) (internal quotation marks and citations omitted). Thus, a state prisoner may not obtain habeas relief on his claim unless he demonstrates the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

As noted above, Zeas' first and second claims mirror § 2254(d)'s standard. Claim One argues the Appellate Court's decision was contrary to, or unreasonably applied, established Supreme Court precedent about the distinction between speech protected under the First Amendment and child pornography, *see* § 2254(d)(1), and Claim Two argues the state court decision involved an unreasonable determination of facts when concluding his recording of A.S. changing clothes was "lewd," and thus constituted child pornography. *See* § 2254(d)(2).

**B.    Claim One: Zeas' § 2254(d)(1) Claim**

Turning to Zeas' first argument, he contends the state court's conclusion—that the surreptitious video recording of A.S.'s exposed breasts constitutes child pornography—contravenes the Supreme Court's precedent delineating between protected and unprotected speech under the First Amendment. (Dkt. 1, p. 15-23.) He argues that the Appellate Court's "statutory interpretation of a 'pose, posture or setting involving a lewd exhibition' is overbroad violating the

First Amendment's Free Speech guarantees, and fails *Ferber*'s strict scrutiny First Amendment analysis." *Id.* at 15-16. According to Zeas, the problem with the state court's "expansive definition" of the term "lewd" is that "it criminalizes speech because of its *de minimis* social value, rather than because of a connection to child abuse." *Id.* at 18.

"We begin by determining the relevant clearly established law." *Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Under the AEDPA, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal quotation marks omitted). In other words, clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A state court decision is "contrary to" clearly established federal law "if the state court 'applie[d] a rule different from the governing law set forth' in Supreme Court decisions or decided a case differently than the Supreme Court has 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)); *see also* § 2254(d)(1). Section § 2254(d)(1)'s "contrary to" clause, however, is not met when the state court, applying the proper rule, reaches a conclusion that this Court would not have independently reached. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (citing *Williams*, 529 U.S. at 406).

In *Miller v. California*, 413 U.S. 15 (1973), the Supreme Court established the standard by which states may regulate "obscene materials," holding that works, which taken as a whole, appeal to the prurient interest, is patently offensive in light of community standards, and lacks serious

literary, artistic, political, or scientific value, fall outside the confines of protected speech and within the permissible scope of regulation. *Id.* at 23-24.

The Supreme Court in *Ferber*, however, recognized that *Miller*'s obscenity standard "does not reflect the State's particular and more compelling interest" in prohibiting child pornography. *Ferber*, 458 U.S. at 760-61. Rather, "[s]tates are entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756. Child pornography offenses, the Supreme Court held, are "limited to works that visually depict sexual conduct by children below a specified age," and "[t]he category of 'sexual conduct' proscribed must [ ] be suitably limited and described." *Id.* at 764.

Applying this standard, the *Ferber* Court upheld New York's child pornography statute that defined "sexual conduct" as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." *Id.* at 765-66. Similarly, in *Osborne v. Ohio*, 495 U.S. 103 (1990), the Supreme Court upheld an Ohio statute prohibiting "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." *Id.* at 113. Though "depictions of nudity, without more, constitute protected expression," *id.* (citing *Ferber*, 458 U.S. at 765 n.18), the Ohio statute at issue was appropriately circumscribed to "avoid[ ] penalizing persons for viewing or possessing innocuous photographs of naked children." *Osborne*, 495 U.S. at 14.

Zeas argues that the Supreme Court's decision in *United States v. Stevens*, 559 U.S. 460 (2010), "fundamentally altered the way prosecutions for child pornography must be analyzed," by

9

clarifying that to fall outside the protection of the First Amendment, the images must "themselves display illegal conduct," *i.e.*, child abuse, "and be intertwined with that conduct." (Dkt. 1, p. 17-20.) But *Stevens* concerned a First Amendment challenge to a statute criminalizing the commercial creation, sale, or possession of certain depictions of animal cruelty. 559 U.S. at 464. It mentioned child pornography "only in passing, and then only to reject an analogy between it and depictions of animal cruelty and to decline the government's invitation to recognize the latter as a new category of unprotected speech." *United States v. Price*, 775 F.3d 828, 838 (7th Cir. 2014) (citing *Stevens*, 559 U.S. at 471-72.). *Stevens* did not, as Zeas suggests, "suddenly confer First Amendment protection on *some* child pornography—i.e., pornographic images that stop short of depicting illegal child abuse." *United States v. Frederickson*, 996 F.3d 821, 824 (7th Cir. 2021) (quoting *Price*, 775 F.3d at 839) (emphasis in original). "That would have been a significant doctrinal development, and not likely to be hidden in a case about" animal cruelty videos. *Price*, 775 F.3d at 839. The Court does not believe that the Supreme Court hides elephants in mouseholes. *See Atkins v. Crowell*, 945 F.3d 476, 479 (6th Cir. 2019); *Soto v. Truitt*, Case No. 96-5680, 2023 U.S. Dist. LEXIS 1750, at *72-73 (N.D. Ill. Jan. 5, 2023) (Durkin, J.). In other words, *Stevens* did nothing to change the understanding derived from *Ferber* that child pornography is categorically unprotected by the First Amendment. *See id.* at 838.

Along these lines, Zeas further argues that *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002), which he contends makes clear that sexual depictions of children only lose their constitutional protection when there is "harm done to children in its production," is controlling. (Dkt. 1, p. 17-21.) *Ashcroft,* however, concerned a First Amendment challenge to certain provisions of the Child Pornography Prevention Act of 1996 (CPPA), prohibiting virtual child

pornography. *Ashcroft,* 535 U.S. at 239-40. It did not concern pornographic images of *actual* children, as is the case here. A.S. is a human being, not a series of zeroes and ones. And though *Ashcroft* distinguished virtual child pornography from the material in *Ferber* by explaining that virtual child pornography "is not 'intrinsically related' to the sexual abuse of children," *Ashcroft*, 535 U.S. at 250, the sexual abuse it spoke of was the use of children to create the speech itself. *Id.* at 254; *see also United States v. Williams*, 553 U.S. 285, 289 (2008) (citing *Ashcroft*, 535 U.S. at 249-51, 254) ("child-protection rationale for speech restriction does not apply to materials produced without children"); *Ferber*, 458 U.S. at 758 ("the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child"). As the Supreme Court explained, the material in *Ferber* was "intrinsically related" to sexual abuse because of the permanent record it created ("[l]ike each defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being"), and because of the economic motive for its production. *Id.* at 249. This Court does not read *Ashcroft*, as it seems Zeas would like it to do, as conditioning the child-pornography determination on whether the image itself shows that the crime of child abuse occurred during its production.

In sum, neither *Stevens* nor *Ashcroft* provides the added gloss that Zeas would like this Court to apply to *Ferber*'s holding. *See Frederickson*, 996 F.3d at 824-25. The "relevant clearly established law" for purposes of this Court's analysis is thus the rule announced in *Ferber*. *Yarborough*, 541 U.S. at 660. As discussed above, *Ferber* held the following: that child pornography is "a category of material outside the protection of the First Amendment[;]" that although child pornography is not limited to "obscene" materials, it is limited to works that visually

11

depict sexual conduct by children, the definition of which must be "suitably limited and described[;]" that "lewd exhibition of the genitals" is an example of a permissible regulation; and, though not providing a definition of "lewdness," established that nudity alone is not enough. *Ferber*, 458 U.S. at 763-65 & n.18; *see also Osborne*, 495 U.S. at 113-14.

The Appellate Court's decision on direct appeal, the last state court to review the merits of Zeas' challenge to the interpretation of Illinois' child pornography statute, was not "contrary to" these principles. § 2254(d)(1). In rejecting his arguments, the Appellate Court relied on *Lamborn*, a Supreme Court of Illinois decision that, applying *Ferber*, established a definition of "lewd" and adopted *Dost*'s six-factor test for determining whether an image constitutes a "lewd exhibition." *See Zeas*, 2020 IL App (2d) 170437-U, ¶ 27 (quoting *Lamborn*, 708 N.E.2d at 354-55); *see also id.* at ¶ 37 (citing *Lamborn*, 708 N.E.2d at 354) ("the adoption of the *Dost* factors ensures that courts do not run afoul of the First … Amendment[] in finding pornography under the statute"). In conducting its analysis, the Appellate Court specifically noted that "simple nudity in itself is insufficient to render an image lewd." *Id.* at ¶ 29. Nevertheless, the Appellate Court concluded the recording of A.S. was not "simple nudity," but a "lewd exhibition" of the minor's fully developed breasts, *id.* at ¶¶ 29-36, which is constitutionally proscribable material under *Ferber*. *See Ferber*, 458 U.S. at 765. Accordingly, the Appellate Court's decision was not "contrary to" clearly established federal law. § 2254(d)(1).

Nor was the Appellate Court's conclusion an "unreasonable application" of *Ferber*. § 2254(d)(1). An "unreasonable application of" clearly established federal law occurs when "the state court correctly identified the governing rule from Supreme Court precedent but "unreasonably applie[d] it to the facts of the particular case." *Corral*, 4 F.4th at 582 (quoting *Bell*,

535 U.S. at 694) (internal quotation marks omitted) (alterations in original). "The Supreme Court has made clear that an 'unreasonable application' of federal law is different from an incorrect application"— "'[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Whatley v. Zatecky*, 833 F.3d 762, 773 (7th Cir. 2016) (cleaned up) (quoting *Harrington*, 562 U.S. at 101) (citing *Yarborough*, 541 U.S. at 664)). In other words, "an 'unreasonable application' occurs only when 'there was no reasonable basis' for the state court's decision." *Reyes v. Nurse*, 38 F.4th 636, 647 (7th Cir. 2022) (cleaned up) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (citing *Harrington*, 562 U.S. at 98)).

In conducting this inquiry, the decisions from the Seventh Circuit, "as well as those of other circuits or state courts are informative only insofar as they may shed light on our understanding of the authoritative Supreme Court precedents." *Reyes*, 38 F.4th at 647 (quoting *Lewis v. Zatecky*, 993 F.3d 994, 1000 (7th Cir. 2021)) (internal quotation marks omitted). If the Supreme Court has not made a holding squarely addressing the question at issue, there can be no unreasonable application of federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (no unreasonable application of clearly established federal law where Supreme Court has not given "clear answer to the question presented"); *Musladin*, 549 U.S. at 77 (state court could not have unreasonably applied clearly established federal law "given the lack of holdings" on the issue from the Supreme Court).

Zeas argues that the Appellate Court's analysis of *Dost*'s first and sixth factors demonstrates the Appellate Court unreasonably applied *Ferber* in concluding the recording of A.S. was lewd. (Dkt. 1, p. 23-30.) Specifically, he contends the recording of A.S. contained "an

insufficient degree of focus on nudity to constitute a 'Focal Point'" under *Dost*'s first factor. (Dkt. 1, p. 23-27.) He argues the Appellate Court's conclusion as to *Dost*'s sixth factor was similarly flawed, as it focused on the voyeur's point of view, rather than the perspective of an objective viewer. *Id.* at 27-30. Zeas cites to several state and circuit cases in support of these arguments. *Id.* at 24-30.

But as stated above, the Supreme Court has not set forth a definition or test for determining "lewdness," let alone standards to apply when considering whether the "focal point" of an image is of the proscribed nudity or whether the depiction of the child is intended or designed to elicit a sexual response in the viewer. Thus, the Appellate Court could not have unreasonably applied clearly established federal law on the issue of lewdness. *See e.g., Sven v. Chandler*, No. 07 C 5952, 2009 WL 3335347, at *6 (N.D. Ill. Oct. 15, 2009).

Nor did the Appellate Court unreasonably apply federal law in concluding the recording of A.S. was not mere nudity and could be proscribed. As the Appellate Court made clear, this was not an innocuous depiction of A.S. Rather, "because [A.S.] is not reacting to the camera, 'the image creates a sense of covert observation that would otherwise not exist.' The victim's candid behavior in undressing and dressing, and her naked breast revealed in such a way that the viewers eyes are drawn to them, place the viewer in the position of a peeping Tom." *Zeas*, 2020 IL App (2d) 170437-U, ¶ 36 (citation omitted). This was not a case of "mere nudity," such as "a mother taking a picture of her child in the bathtub or a doctor taking a picture of a minor patient's pubic area for a medical diagnosis," *United States v. Miller*, 829 F.3d 519, 525-26 (7th Cir. 2016), and the Appellate Court's finding that the recording constituted child pornography was not "so lacking in justification" that it lies "beyond any possibility for fairminded disagreement." *Harrington*, 562

14

U.S. at 103. Accordingly, Zeas cannot establish the Appellate Court's conclusion amounts to an unreasonable application of clearly established federal law. § 2254(d)(1).

### C.     Claim Two: Zeas' § 2254(d)(2) Claim

Next, Zeas argues that the Appellate Court's decision was based on an unreasonable determination of facts because it was "objectively unreasonable" for the state court to find three of the six *Dost* factors were met, thereby leading to its conclusion that the recording of A.S. constituted child pornography. (Dkt. 1, p. 30-35.) Though he states the Appellate Court's determination as to *Dost*'s first, fourth, and sixth factors were unreasonable, his argument relies primarily on the sixth factor—whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *Id.* at 33-34. He contends the Appellate Court's "voyeur-point-of-view" approach was "novel," and the conclusion that the recording of A.S. was designed to elicit a sexual response was not supported by the record. *Id.*

Under § 2254(d)(2), "a decision is based upon an 'unreasonable determination of facts' if it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018) (quoting *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013)). This Court presumes "that the state court's factual determinations are correct unless" Zeas "rebuts the presumption by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1); *Newman*, 726 F.3d at 928).[5]

---

5 The AEDPA has two provisions that govern a federal habeas court's review of a state court's factual findings, § 2254(d)(2) and § 2254(e)(1). As explained above, § 2254(d)(2) "provides that a reviewing court should consider whether the factfinding 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' whereas § 2254(e)(1) says that 'a determination of a factual issue made by a State court shall be presumed to be correct'" unless the petitioner "'rebut[s] the presumption of correctness by clear and convincing evidence.'" *Thurston v. Vanihel*, 39 F.4th 921, 929 n.2 (7th Cir. 2022). The Supreme Court has "not defined the precise relationship" between these two provisions, but the Seventh Circuit has held that "§ 2254(e)(1) provides the mechanism for proving unreasonableness [under § 2254(d)(2)]." *Id.* (internal quotation marks and

Although Zeas frames his claim as a § 2254(d)(2) argument, he does not challenge the facts upon which the Appellate Court based its conclusion. Rather, he instead challenges the Appellate Court's interpretation of the sixth *Dost* factor and argues the state court applied the wrong approach in determining whether the recording of A.S. was designed to elicit a sexual response. (Dkt. 1, p. 34) ("The Second District crafted its own theory of the sixth *Dost* factor. It thus never considered whether the video was designed to elicit a sexual response in the viewer. … The refusal to view the video from the perspective of an objective viewer was unreasonable."). This type of argument falls squarely within the parameters of § 2254(d)(1). *See Goodwin v. Pfister*, No. 12 C 2154, 2013 WL 3761556, at *5 (C.D. Ill. July 16, 2013). As noted above, the Supreme Court has not clearly established a methodology for determining whether an image of a child is designed to elicit a sexual response; thus the Appellate Court's finding as to *Dost*'s sixth factor cannot be considered unreasonable. *See Wright*, 552 U.S. at 126; *Musladin*, 549 U.S. at 77. And even if the Appellate Court's "voyeur-perspective" was the incorrect approach, merely being "wrong" is not enough to warrant federal habeas relief; rather, the state appellate court's determination must be "objectively unreasonable," which, for the reasons stated above, Zeas cannot show. *Perez-Gonzalez*, 904 F.3d at 562 ("An unreasonable application of federal law means objectively unreasonable, not merely wrong; even clear error will not suffice.") (internal quotation marks and citations omitted).

As for the "unreasonable determination" prong of § 2254(d)(2), because Zeas does not challenge the actual facts of his child pornography conviction (*i.e.*, the contents of the recording of A.S.), he cannot rebut the presumption that the Appellate Court's factual findings were correct. § 2254(e)(1). And even if this Court were to set aside the fact that Zeas cites, as part of the "Factual

citations omitted) (alterations in original). For Zeas' claim, whether reviewed under § 2254(d)(2)'s reasonableness standard, or § 2254(e)(1)'s clear and convincing standard, the result is the same.

Basis of his Claim," the Appellate Court's summary of the facts surrounding the recording, (Dkt. 1, p. 31), and construe his argument as a true "unreasonable determination of fact" challenge, his claim would still be meritless. His blanket argument that "[t]he image depicts naked breasts, not lewdness," is not clear and convincing evidence sufficient to rebut the presumption that the Appellate Court's factual findings are correct. *See Sven*, 2009 WL 3335347, at *8. Nor can Zeas demonstrate unreasonableness with the Appellate Court's determination of the *Dost* factors. In finding lewdness, the state court relied on the recording itself which, as described above, depicted A.S. dressing and undressing—revealing the minor's naked breasts in such a way that drew the viewer's eyes to them. *Zeas*, 2020 IL App (2d) 170437-U, ¶¶ 36. Zeas thus cannot establish the Appellate Court made an unreasonable determination of fact in holding the recording constituted child pornography. § 2254(d)(2).

### D.     Claim Three: Zeas' Due Process Claim

Finally, Zeas raises a due process claim. (Dkt. 1, p. 35-40.) He contends that Illinois' child pornography statute requires proof beyond a reasonable doubt of *Dost* factor two ("pose"), factor three ("setting"), or factor five ("posture"). *Id.* at 38. Because none of these factors were found in his case, Zeas argues that his due process rights were violated as he was convicted of child pornography without proof of all the requisite statutory elements. *Id.* Additionally, he argues that because "exhibition" was not properly defined by the Appellate Court as requiring sexual conduct, there was lack of proof of this statutory element as well. *Id.* at 40.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)

17

(quoting *In re Winship*, 397 U.S. 358, 364 (1970)). In Illinois, a person commits child pornography

if he or she:

> (1) films, videotapes, photographs or otherwise depicts or portrays … any child
> whom he or she knows or reasonably should know to be under the age of 18 …
>
>> (vii) depicted or portrayed in any pose, posture or setting involving a lewd
>> exhibition of the unclothed or transparently clothed genitals, pubic area,
>> buttocks, or, if such person is female, a fully or partially developed breast
>> of the child or other person…

720 ILCS 5/11-20.1(a)(1)(vii).

Zeas' claim was last addressed by the Appellate Court on direct review. There, Zeas

challenged the trial court's statutory interpretation of Illinois' child pornography statute, arguing

he was convicted without proof that the recording of A.S. was a "lewd 'pose, posture or setting.'"

(Dkt. 15-1, p. 19.) The Appellate Court rejected this argument:

> Initially, we note that the word "lewd" in our pornography statute does not modify
> the words "pose, posture or setting," but rather the word "exhibition." Specifically,
> it proscribes minors being "depicted or portrayed in any pose, posture or setting
> *involving a lewd exhibition* of the unclothed genitals *** or partially developed
> breast of the child." (Emphasis added.) 720 ILCS 5/11.20.1(a)(1)(vii) (West 2014).
> The point of adopting the *Dost* factors, and of our analysis in *Sven*, is the need for
> a workable definition of "lewd," not to ignore the plain meaning of "pose, posture
> or setting" in the statute. Indeed, the adoption of the *Dost* factors ensures that the
> courts do not run afoul of the First and Fourteenth Amendments in finding
> pornography under the statute.

*Zeas*, 2020 IL App (2d) 170437-U, ¶ 37.

Zeas interprets the Appellate Court's ruling as "conceding" that the element of "pose,

posture or setting" was not present in his case, and argues the affirmance of his conviction without

proof of this element violated his right to due process. (Dkt. 1, p. 38.) The Court does not read the

Appellate Court's ruling as making such a concession. Zeas argued, as he does before this Court,

that without proof of *Dost* factor two, three, or five, the statutory element of "pose, posture or

setting" could not be met. But, as the Appellate Court explained, this argument misunderstands the application of the *Dost* factors, which were adopted for the purpose of determining whether an image constitutes a "lewd exhibition"—not for defining "pose, posture or setting." *Zeas*, 2020 IL App (2d) 170437-U, ¶ 37.

In any event, "[a] claim that the state court 'misunderstood the substantive requirement of state law' … does not present a true *Jackson* challenge and is not cognizable under § 2254." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)). As the Supreme Court has "stated many times[,] federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks and citations omitted).

Zeas litigated the meaning of Illinois' child pornography statute in state court and lost. *See Bates*, 934 F.3d at 102 ("State law means what state courts say it means."). "He cannot obtain a second opinion on the meaning" of Illinois' child pornography statute "through the maneuver of making a [due process] claim under *Jackson*." *Id.* at 102; *see also Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (denying § 2254 claim where petitioner was "impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law.") His due process claim is therefore denied.

For all the reasons stated above, Zeas is not entitled to habeas corpus relief on any of his claims. *See* § 2254(d)(1)-(2). His habeas corpus petition is therefore denied. (Dkt. 1.)

## III.    Certificate of Appealability

The Court declines to issue a certificate of appealability. Such a certificate "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" or

error with this Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). Zeas must show that reasonable jurists could debate whether this Court should have resolved his claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Zeas cannot make this showing.

## IV.    Conclusion

Zeas' habeas corpus petition (Dkt. 1) is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of Respondent and against Zeas. Civil Case Terminated.

ENTERED:

Dated:    March 28, 2023

_____
IAIN D. JOHNSTON
United States District Judge

20